160 So.2d 458 (1964)
Elizabeth MATTOX et al.
v.
PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY.
7 Div. 617, 617-A.
Supreme Court of Alabama.
January 30, 1964.
Herman Watson, Jr., LaFayette, and Merrill & Merrill, Heflin, for appellants.
Merrill, Merrill, Vardaman & Williams, Anniston, for appellee.
LAWSON, Justice.
Drexal Mattox recovered a judgment in the Circuit Court of Cleburne County against Tommy L. Poore in the amount of $1750 for damages sustained in an automobile accident. Elizabeth Mattox, in a separate suit in the same court recovered a judgment against Poore in the sum of $1950 for damages sustained in the same accident.
Drexal and Elizabeth Mattox secured separate writs of garnishment against Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, hereinafter referred to as the Casualty Insurance Company, which filed answers to the writs of garnishment wherein it averred that it was not indebted to Tommy L. Poore.
Drexal and Elizabeth Mattox filed contests to the answers and demanded trials by jury.
The same question was presented in each of the garnishment cases, so they were tried together.
*459 At the conclusion of the evidence, the trial court at the request of the garnishee, the Casualty Insurance Company, instructed the jury, in each case, that it could not return a verdict against the garnishee. There were separate verdicts in favor of the garnishee and separate judgments discharging it.
Drexal and Elizabeth Mattox filed motions for new trials, which were overruled. They have taken separate appeals to this court and have made separate assignments of error, although submission is on only one record.
The right of Drexal and Elizabeth Mattox to proceed against the Casualty Insurance Company by way of garnishment was not questioned in the trial court and is not questioned here. See Macey v. Crum, 249 Ala. 249, 30 So.2d 666.
The facts are these:
Poore was first issued a Family Combination Automobile policy by the Casualty Insurance Company on June 8, 1960, through its agent, Dethrage Insurance Agency of Anniston, Alabama. At that time Poore owned a 1950 Chevrolet automobile which he had purchased in April of 1960. The policy issued on June 8, 1960, covered the period from June 8, 1960, to June 8, 1961. The only automobile described in that policy was the 1950 Chevrolet.
Poore quit driving the 1950 Chevrolet in November or December of 1960. He acquired a 1952 Chevrolet in March of 1961.
On June 8, 1961, a renewal policy of the Casualty Insurance Company was issued to Poore covering the period from June 8, 1961, to June 8, 1962. The only automobile described in the renewal policy was the 1950 Chevrolet.
On July 19, 1961, Poore, while driving the 1952 Chevrolet, was involved in an accident with an automobile in which Drexal and Elizabeth Mattox were riding. It was this accident which resulted in the judgments recovered by Drexal and Elizabeth Mattox against Poore.
At the time of the accident the 1950 Chevrolet could not be driven. Poore had previously sold the engine, transmission and "back end" of that automobile. Poore owned the "body" of the 1950 Chevrolet at the time of the accident. He sold it for scrap iron after the accident.
Poore did not advise the Casualty Insurance Company or its agent prior to the accident of the fact that he had acquired the-1952 Chevrolet which was involved in the accident or that he had dismantled the 1950 Chevrolet. Premium for the renewal policy was received by Dethrage but not prior to the accident.
The coverage provisions applicable to this case, i. e., bodily injury liability and property damage liability, read as follows:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. bodily injury, sickness or disease, * * * hereinafter called `bodily injury,' sustained by any person;
B. injury to or destruction of property, including loss of use thereof, hereinafter called `property damage';
arising out of the ownership, maintenance or use of the owned automobile, * * *." (Emphasis supplied)
Definitions, under Part I, include:
"`named insured' means the individual named in Item 1 of the declarations * * *
"`owned automobile' means a private passenger, farm or utility automobile or trailer owned by the named insured and includes a temporary substitute automobile;
"`temporary substitute automobile' means any automobile or trailer, not *460 owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;" (Emphasis supplied)
The persons insured under Part I of the policy are:
"(a) With respect to the owned automobile,
(1) the named insured,

* * * * * *"
In Item 1 of the declarations attached to the policy, Tommy L. Poore is the named insured.
Item 2 of the declarations provides:
"Unless otherwise stated herein, the total number of private passenger, farm and utility automobiles owned on the effective date of this policy by the named insured does not exceed the number of such automobiles described above." (Emphasis supplied)
As hereinbefore indicated, the only automobile "described above" was the 1950 Chevrolet.
Condition 2 of the policy provides:
"If the named insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company during the policy period of such change. Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof."
Condition 17 of the policy which applies to declarations provides:
"By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."
The appellants take the position that the 1952 Chevrolet was a temporary substitute automobile within the meaning of the temporary substitute clause in the policy in question and was, therefore, covered by the policy. But the 1952 Chevrolet was owned by Poore and the temporary substitute clause in the policy in suit affords coverage only to an automobile or trailer, not owned by the named insured when used in the manner therein described. But appellants say that in Safeco Insurance Company of America v. Banks et al., 275 Ala. 119, 152 So.2d 666, wherein a family automobile policy was involved, we held that an automobile owned by the named insured but not described in the policy was covered by the policy while being used temporarily by the named insured while the described automobile was immobilized for mechanical defects and under repair. Appellants also point out that the temporary substitute clause in the policy under consideration in Safeco is in the exact language of the temporary substitute clause in the policy in suit. But our holding in Safeco was not based on the provisions of the temporary substitute clause but on the "owned automobile" clause which read: "`owned automobile' means the described private passenger or utility automobile owned by the named insured, and includes a temporary substitute automobile and any trailer owned by the named insured." (Emphasis supplied)
The "owned automobile" clause in the policy here under consideration differs from that in the policy under consideration in Safeco in two material respects. It does *461 not expressly limit coverage to the described automobile and it does not contain language susceptible of the construction that coverage is afforded to a temporary substitute automobile owned by the named insured.
We hold that the policy in question did not afford coverage to the 1952 Chevrolet at the time of the accident on the theory that it was a "temporary substitute automobile." Drake v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 265 Ala. 444, 92 So.2d 11.
The appellants next take the position that the 1952 Chevrolet was covered by the policy in suit at the time of the accident, although not described in the policy or in the declarations attached thereto, because there is no language in the policy or declarations which limits coverage to the automobile (1950 Chevrolet) described in the declarations. The "owned automobile" clause in the policy in suit does not contain language limiting coverage to the automobile described in the policy, as does the "owned automobile" clause under consideration in the Safeco case, supra.
As pointed out in the Safeco case, supra, the family automobile policy began to appear in the automobile insurance field in 1956 and by 1958 some of its terms and provisions had been changed when the policy involved in the Safeco case was issued.
The policy here involved seems to be in the language of the original policies which became in use in most states on or about September 1, 1956. See Lejeune v. State Farm Mut. Auto. Ins. Co., et al. (Ct. of App. of La., First Circuit), 107 So.2d 509.
In an article written by Curtis M. Elliott, entitled "The Family Automobile Policy," published May, 1958, in the Nebraska Law Review, Vol. 37, No. 3, pp. 581, 582, it is said:
"The Family Policy was a hastily drawn contract. A number of apparent inconsistencies and actual omissions leave much to be desired in a well-constructed and easily-comprehensible insurance contract.
"One rather important inconsistency exists between the manual rules and the policy provisions concerning the type of automobile eligible for coverage under the Family Policy. Under all insuring agreements in the contract liability, medical payments, and physical damagecoverage is provided for all `owned automobiles,' and an owned automobile is defined as including a private passenger or utility automobile or trailer owned by the named insured, including a temporary substitute automobile. * * *" (Emphasis supplied)
This article, as we read it, states that the contractual provisions of the policy are that insurance is to be provided for all private passenger and utility automobiles owned by the named insured.
In an article published in Insurance Counsel Journal, January, 1957, pp. 13, 16, entitled "The New Family Automobile Policy," the author, Fred C. Parcher, stated that such a policy does not require a description of the insured's automobile unless physical damage coverage is being provided.
We are cited to no decisions defining or construing the so-called Family Automobile Policy which became in use in the fall of 1956.
Our research has disclosed several cases from other jurisdictions which have dealt with family automobile policies which contained identical wording in most pertinent respects with that involved in the instant case.
Some of those cases deal with the question as to whether such a policy covers an automobile other than that described in the *462 policy or declarations owned by the named insured at the time of the issuance of the policy but not described in the policy or listed in the declarations attached to the policy. An appellate court of Missouri, in Wise v. Strong, 341 S.W.2d 633, answered that question in the negative when the facts showed that the insurer at the time the policy was issued was without knowledge of the fact that the insured owned any automobile other than the one listed in the declarations. To like effect is the holding of the Supreme Court of Nebraska in Preferred Risk Mutual Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N.W.2d 126.
Louisiana courts have held that such a policy covers an automobile other than that described or listed where the insurer knew that the insured owned the undescribed or unlisted automobile and took no step to exclude it from the coverage of the policy. Lejeune v. State Farm Mut. Auto. Ins. Co. (La.App.), supra; Indiana Lumbermens Mut. Ins. Co. v. Russell, 243 La. 189, 142 So.2d 391; Pel-State Oil Co., Inc. v. Weimer (La.App.), 155 So.2d 218. But those cases all refer to certain rules or directives of the Casualty & Surety Division of the Louisiana Insurance Rating Commission. See Traders & General Ins. Co. v. Mallitz, 315 F.2d 171, where the United States Court of Appeals for the Fifth Circuit applied the rule of the cases last above cited. Cf. Altazan v. Reed (La.App.), 154 So.2d 610, where a contrary conclusion was reached. But the policy there under consideration was similar to that involved in our Safeco case, supra. The "owned automobile" clause referred to the automobile "described in the policy."
The other cases which have come to our attention deal with the question of coverage of after-acquired automobiles. They hold that an automobile acquired by the insured after the issuance of the policy and, hence, not described or listed in the policy is covered by the policy although the insurer is not advised of the acquisition of the newly acquired automobile until after the accident, provided the insurer receives notice of the acquisition during the policy period.Imperial Casualty & Indemnity Co. v. Relder et al., 8 Cir., 308 F.2d 761; American Universal Insurance Co. v. Costello, (R.I.), 185 A.2d 447; Beasley v. Wolf, (Fla.App.), 151 So.2d 679.
None of the cases cited above dealt with a factual situation similar to that presented on this appeal. However, they do demonstrate that some courts have held that under certain circumstances protection is afforded by a family automobile policy to automobiles other than those described or listed in the declarations.
At the time the Casualty Insurance Company issued its original policy to Poore, which covered the period from June 8, 1960, to June 8, 1961, Poore owned only one automobile, a 1950 Chevrolet, which was described in the declarations. Poore made no misrepresentation or practiced any concealment to secure that policy. During the policy period he in effect disposed of the 1950 Chevrolet and acquired a 1952 Chevrolet. He failed to advise the insurer during the policy period of the disposition of the 1950 Chevrolet or the acquisition of the 1952 Chevrolet. The policy period expired without any occurrence which could affect the liability of the insurer during that period. Shortly before the expiration of the period of time covered by the original policy the insurer notified Poore that it was going to renew his policy.
The renewal policy was issued on June 8, 1961, for the period from June 8, 1961, to June 8, 1962. The declarations listed one automobile, the 1950 Chevrolet. At that time Poore did not own a 1950 Chevrolet automobile. It had been dismantled and was no longer an automobile, although Poore retained the body. The word "automobile" is derived from the Greek word "autos" meaning self, and the Latin word "mobilis" meaning freely movable, signifying self-movable, changing its own place or able to effect a change of its own place.Seaford v. Nationwide Mutual *463 Ins. Co., 253 N.C. 719, 117 S.E.2d 733, 85 A.L.R.2d 496; Bonds v. State, 16 Ga. App. 401, 85 S.E. 629.
When the policy in suit was issued Poore owned only one automobile, the 1952 Chevrolet. It was not listed in the declarations or otherwise described in the policy. True, it was Poore's failure to advise the insurer of the changes which had come about which caused the misdescription of the automobile which Poore owned on June 8, 1961.
But, in our opinion, the 1952 Chevrolet was an "owned automobile" of the named insured within the meaning of the owned automobile clause of the policy and was covered by the policy issued on June 8, 1961, although not described therein. In so far as we are able to determine the policy does not require a description of the insured's automobile in regard to the coverage afforded. And as we have indicated above, we are not here involved with a situation where the insured owned more than one automobile at the time the policy was issued.
As pointed out in the Safeco case, supra, we have consistently held that insurance policies should be liberally construed in favor of the insured and strictly against the insurer.
The policy here involved is the insurer's own handiwork. The remedy, if it desires one, is obvious. Apparently some companies have already taken steps to cure some of the inconsistencies and omissions contained in the original family automobile policies.Safeco Ins. Co. of America v. Banks, supra; Altazan v. Reed, supra.
We are of the opinion that the trial court erred in giving the affirmative charge in each of these cases. It follows that the judgments appealed from are due to be reversed. It is so ordered.
Reversed and remanded.
LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.