**Betty Jo MANNING, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**W. B. STONE, Administrator of the Estate of Howard Wilson Anderson, Jr., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Darlene DAVIS, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Civ. Nos. 2193, 2197, 2192.**

United States District Court
W. D. North Carolina,
Asheville Division.

June 28, 1965.

See also D.C., 235 F.Supp. 615.

Robert R. Williams, Jr., Asheville, N. C., for plaintiffs Betty Jo Manning and W. B. Stone.

William J. Cocke, Asheville, N. C., for plaintiff Darlene Davis.

William B. Webb, Charlotte, N. C., for defendant.

CRAVEN, Chief Judge.

On motion for summary judgment, the court does not, strictly speaking, find facts, but, instead, in the appropriate case, may conclude that in one or more aspects there is no genuine dispute as to the material facts and that the controlling factor is one of law. Even so, it is not improper to narrate what the facts appear to be in order to demonstrate that the case is an appropriate one for summary judgment. 3 Barron & Holtzoff, Federal Practice & Procedure Section 1242, p. 20 (rev. ed. 1958).

From the pleadings, statements of counsel, and answers to interrogatories,

the facts, not in genuine dispute, appear to be as follows:

On December 19, 1960, Betty Jo Manning was operating an automobile owned by Montreat Association and was traveling north on the Black Mountain-Montreat highway approaching the Montreat gate. Darlene Davis and another person were passengers in the Montreat Association vehicle. At the same time, Harley W. Meredith, Jr., hereinafter called *Junior*, was driving a 1957 Ford in the opposite direction, and there was a collision. Junior and Howard W. Anderson, Jr., a passenger, were killed. The other passenger was injured. Much litigation ensued thereafter. All efforts to show Manning actionably negligent failed. It has been adjudicated more than once that the collision was due to the sole negligence of Junior. It is not presently necessary to decide whether such adjudication is res judicata in this case, although these suits were brought in this court to require State Farm to pay judgments previously obtained against the estate of Junior and/or his father, Harley Meredith, Sr.

Junior was driving a 1957 Ford, which vehicle was registered in the name of his father, Harley W. Meredith, Sr. At that time, there were also registered in the name of Meredith, Sr. a 1959 Cadillac and a 1949 Buick. All documents relative to registration of these vehicles in North Carolina were in the name of Meredith, Sr. The purchase of the Ford was in Meredith, Sr.'s name, as well as the financing arrangements at Oteen Veterans Administration Credit Union. When the Ford was purchased, Junior was under 21. At the time of the collision he was 21 plus. Junior was employed at A & P store in Black Mountain at the time of the collision. He ate meals at his father's home and usually slept there. Junior neither owned nor maintained any separate residence. When he was at his father's home, he kept the 1957 Ford there. It was commonly driven by Junior and never by his father or his mother or his sister.

Aetna Insurance Company, at the time of the collision, provided coverage to Junior and/or the 1957 Ford under an assigned risk policy. The coverage was in the amount of $10,000.00 and has been entirely paid out to those entitled to receive it by reason of death or serious injury.

At the time of the collision Meredith, Sr. had an automobile liability policy issued in his name by defendant State Farm, which policy also described Meredith, Sr.'s Buick and Cadillac automobiles as insured vehicles. The 1957 Ford is not listed in the policy. The policy is denominated: Family Automobile Policy— Combination Form.

Some types of insurance in North Carolina are governed in great detail by legislative enactments specifying precisely what provisions shall be contained in the policies, e. g., fire insurance. The Legislature of North Carolina has never specified the provisions and language that must be included in automobile liability insurance policies, except in a limited category of such policies, namely an owner's or operator's policy of liability insurance issued to provide the minimum requisite responsibility under the Motor Vehicle Safety and Financial Responsibility Act of 1953. N.C.G.S. Section 20–279.1 et seq., and 279.21. There is, therefore, no *general* legislation prescribing the contents of an automobile liability insurance policy. Indeed, it has been specifically enacted that coverage which is *additional* to the minimum requisite shall not be subject to the provisions of the Motor Vehicle Safety and Financial Responsibility Act of 1953. N.C.G.S. Section 20–279.21(g).

North Carolina General Statutes Section 20–279.21 provides that for purposes of compliance with the financial responsi-

bility law an owner's policy of liability insurance *shall* designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted. But such requirement, by the same section of the statute, has no applicaion to excess or additional coverage such as afforded Meredith, Sr. in the State Farm policy. For purposes of this lawsuit, it is doubtful that Meredith, Sr.'s policy was either an "owner's" or "operator's" policy within the meaning of the Financial Responsibility Act. Its coverage was broader. Therefore, the fact that the 1957 Ford was not described or referred to in the Meredith, Sr. policy probably does not end the matter in favor of State Farm. Plaintiffs now earnestly contend that Meredith, Sr. was the owner of the 1957 Ford, and cite N.C.G.S. Section 20–279.1(8) in support of the proposition. That section prescribes that the person who holds the legal title of a motor vehicle is "owner" for purposes of the Motor Vehicle Safety and Financial Responsibility Act of 1953. But the def- inition is not a general one for all pur- poses. If that section of the statute must be applied, as plaintiffs contend, to establish ownership of the Ford in Mere- dith, Sr., then N.C.G.S. Section 20–279.- 21, which requires that the Ford shall be explicitly described in the policy, has equal application. Probably neither sec- tion of the statute applies.

The requirements of the Motor Vehicle Safety and Financial Responsibility Act of 1953 were satisfied by the issuance of the Aetna policy which covered the 1957 Ford. Previously State Farm had in- sured Junior, but had declined to do so subsequently because of his convictions for speeding offenses. The Aetna policy was an assigned risk one issued for the express purpose of satisfying the 1953 Act. Nothing in this 1953 Act indicates that there must be double coverage, and there is no question about Aetna cover- age. The entire $10,000.00 has been paid.

But, in the final analysis, it is not necessary that I attempt to guess, except to a limited extent, the North Carolina Supreme Court's future interpretation of this difficult statute. Because, if it ap- plies to Junior and his Ford, the result is simply to establish ownership in Har- ley Meredith, Sr. *and* lack of coverage by reason of failure to list the Ford vehicle in the policy.

■ Unless Harley Meredith, Sr. owned the 1957 Ford automobile, State Farm cannot possibily be liable under its policy issued to Mr. Meredith, Sr. This is so because all of the evidence in the prior trials, copies of which have been examined by the undersigned, failed to show any agency relationship between father and son on the night of the colli- sion. None of the plaintiffs have even suggested to this court that there is any evidence tending to show such agency. All that they have, with respect to agency, is the statutory presumption created by N.C.G.S. Section 20–71.1. This is simply a rule of evidence—to shift the burden of going forward with the proof to those persons better able to establish the true facts than are plain- tiffs. It is clearly established that when- ever the facts with respect to agency are established, without contradiction, it is the duty of the court to disregard the statute even to the point of setting aside a verdict which the statute permits. Jyachosky v. Wensil, 240 N.C. 217, 81 S.E.2d 644 (1954). This has been twice done in the superior court.

This is a difficult lawsuit with many convolutions. For a long time plaintiffs have proceeded on the theory that Junior owned the 1957 Ford and that liability of Mr. Meredith, Sr. was predicated on agency. Counsel now abandon this ap- proach, seek to withdraw the admission previously made that the Ford was owned by Meredith, Jr., and finding support in N.C.G.S. Section 20–279.1 (hereinabove discussed), now insist that Mr. Meredith, Sr. is the owner of the 1957 Ford by reason of the statutory definition. This

is an ingenious contention, not without merit, and ably briefed by counsel. But, as I have indicated above, I do not believe the statute is one of general application. Ownership, in my opinion, must be determined from all of the surrounding facts and circumstances and not simply from the statutory definition. Except for registration of title in Mr. Meredith, Sr.'s name, plaintiffs are unable to suggest to the court any evidence tending to show him to be the owner. All of the testimony is to the contrary. Mr. Meredith, Sr. did not pay for the automobile, put up a downpayment (a trade-in), make the installment payments, keep the car in repair and maintain it, nor buy gas and oil for it. None of the testimony tends to show that he exercised any control whatsoever over the 1957 Ford. Nor did he ever drive it. Under North Carolina law, a minor may own an automobile. Indeed, it may be registered in his name even though he is a minor. Ordinarily automobiles owned by minors are registered in the names of adults for reasons having nothing to do with ownership. Frequently it is done to protect the dealer from an unenforceable contract with a minor. See Barger v. M. & J. Finance Corp., Inc., 221 N.C. 64, 18 S.E.2d 826 (1942). In this instance it was apparently done in order to borrow money from a Veteran Administration loan agency for whose credit Junior was not himself eligible, and also to protect the dealer.

■■ Although I think Junior owned the 1957 Ford, I do not think the contrary contention is a frivolous one, and for that reason the answer should not depend upon a procedural technicality or mistake of law. Ownership is not so much a fact as a legal conclusion—at most a mixed question of law and fact. Plaintiffs' motions to withdraw their previous admissions, in whatever form made, that the Ford was owned by Junior are allowed.

When the collision occurred, the second 1961 amendment to N.C.G.S. Section 20–72(b) had not been enacted. Prior to July 1, 1961, compliance with registration procedures was not a prerequisite to transfer or establishment of ownership, if it is now.

■ If Mr. Meredith, Sr. did in fact own the 1957 Ford at the time of the collision, the failure to list the Ford in the policy would not prevent coverage of that vehicle and its operation by his son. Junior was a resident of the same household, and, beyond question, his use of the vehicle was with the permission of Mr. Meredith, Sr., if it be assumed that the car was owned by the latter. I do not believe that coverage in a family automobile policy is restricted to *named* vehicles listed in the policy. Mattox v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co., 276 Ala. 172, 160 So.2d 458, 461.

But the State Farm policy provides "the total number of private passenger, farm and utility automobiles owned on the effective date of this policy by the named insured does not exceed one, unless otherwise stated in the exceptions above." Listing the Buick and Cadillac has the effect of increasing the maximum number of vehicles covered to *two*.

In Mattox the facts were consistent with this policy limitation, i. e., the car held to be covered had replaced one worn out to the extent that it was no longer a motor vehicle.

■ Even if Meredith, Sr. owned the Ford, it is held that that vehicle is not covered by the State Farm policy because coverage is limited to *two* vehicles. Listing the Buick and Cadillac exhausted the numerical limitation—and thus excluded the Ford.

■ In addition to the foregoing contentions of the plaintiffs with respect to coverage, plaintiffs also contend that if there be no coverage by reason of "exclusions" and "definitions" of the contract of insurance, that such limitations are contrary to public policy and public interest and ought to be disregarded by the court. This is a legislative rather than a judicial matter. Quite possibly, at some future date, the Legislature of North Carolina may see fit to "write"

liability insurance policies. But, until it does so, questions of coverage are still to be determined under general principles of private contract. The provisions contained in the State Farm policy do not, in my opinion, violate any established public policy.

 A third contention of plaintiffs is that the defendant waived its defenses and is now estopped to assert noncoverage. This contention is based upon the fact, apparently beyond dispute, that State Farm did investigate the collisions and employed Mr. O. E. Starnes to represent the company and Betty Jo Manning. State Farm had written the Manning policy as well as the Meredith, Sr. policy. Under these circumstances, in my opinion, there is no estoppel or waiver.

By way of summary, the case comes to this: if Meredith, Sr. owned the 1957 Ford, and but for the policy limitation that the total number of vehicles shall not exceed one unless indicated in the policy, there is no question in my mind but that the State Farm policy would provide coverage to Junior at the time of the collision. There is a genuine dispute as to the ownership of the 1957 Ford, but it is a dispute of law, in my opinion, rather than fact. The facts with respect to that ownership are not genuinely in dispute. As a matter of law, it is adjudged that Junior owned the 1957 Ford.

If I am in error about that, and if it be assumed that Meredith, Sr. owned the 1957 Ford, it is, nevertheless, adjudged that the 1957 Ford is not within the coverage of the Meredith, Sr. policy issued by State Farm because of the numerical limitation contained in the policy.

Summary judgment will be granted in favor of State Farm. Plaintiffs may want to appeal from these judgments. Since the briefs indicate that plaintiffs have changed their legal theory, the court will, on motion of plaintiffs, consider appropriate amendments to the pleadings. If such amendments are proposed, counsel may consider eliminating entirely the question of agency as between father and son. Under the new theory that the Ford was owned by the father, the question of agency is superseded. Permission to operate gets the plaintiffs just as far, and there is, of course, no quesion about permission.