179 So.2d 731

**NORTH RIVER INSURANCE COMPANY**

**v.**

**J. E. JACKSON, d/b/a Jackson's Garage.**

**4 Div. 173.**

Supreme Court of Alabama.

Nov. 4, 1965.

Harold Albritton, Albrittons & Rankin, Andalusia, for appellant.

W. H. Baldwin, Andalusia, for appellee.

LAWSON, Justice.

This appeal involves the interpretation of a Garage Liability Policy issued by the appellant insurance company to the appellee, Jackson, covering his automobile repair shop.

The issue presented is whether the defendant insurance company's policy issued to Jackson covers the damage by fire to a customer's automotive truck while it was in Jackson's shop for repairs.

On May 19, 1961, one Jesse Taylor took his truck to appellee's garage for repairs. While the truck was in the garage undergoing repairs it caught fire and burned.

On March 14, 1962, Taylor filed suit against appellee in the Circuit Court of Covington County, Alabama, claiming damages resulting from the burning of his truck.

The summons and complaint were forwarded by appellee to appellant, who declined to defend the suit on the ground that the policy excluded coverage under the facts of the case.

Appellee employed counsel at his own expense to defend the suit. The trial of the case resulted in a jury verdict for the plaintiff, Taylor, for the sum of $1,200 and judgment thereon was entered by the court. The appellee paid this judgment and court costs. The court costs amounted to $39.90.

On November 7, 1962, appellee filed suit against The North River Insurance Company seeking the sum of $2,000, plus interest, allegedly due on the policy of garage liability insurance and based on the prior judgment which had been rendered against appellee in the suit for property damage, which suit appellant had refused to defend.

The cause was tried to a jury and the appellant requested the general affirmative charge, which was refused.

There was a verdict for Jackson in the amount of $1,900. Judgment followed the verdict. The insurance company's motion for a new trial having been overruled, it has appealed to this court.

The policy in question contains four types of coverage: Coverage A, Bodily Injury Liability; Coverage B, Property Damage Liability; Coverage C, Automobile Medical Payments; and Coverage D, Property of Others in Charge of Named Insured. Jackson was insured under Coverages A and B but not under Coverages C and D. Coverage B, which is the coverage here relied upon by Jackson as the basis for his suit, obligates the company "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined." The Coverage B "hazard" which Jackson contends his loss arose out of is defined (in Division 2 of the "Definition of Hazards") as:

"The ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the use in connec-

tion with the above defined operations of any automobile not owned or hired by the named insured, a partner therein or a member of the household of any such person."

Division 1 of the "Definition of Hazards" reads in pertinent part:

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of an automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for nonbusiness purposes of (1) · any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of household of any such person."

Division 3 of the "Definition of Hazards" covers "the ownership, maintenance or use of elevators at the premises."

It is also pertinent to note that under Coverage D, the company is obligated "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property of others of a kind customarily left in charge of garages, including the loss of use thereof, caused by accidental collision or upset of such property while in charge of the named insured in connection with his automobile sales agency, repair shop, service station, storage garage or public parking place operations."

The policy contains ten exclusions. Relevant here are the following:

"This policy does not apply:

\*      \*      \*      \*      \*      \*

(f) under coverage B, to injury to or destruction of

(1) property owned by or rented to the insured, or

(2) except under division 3 of the Definition of Hazards, property in charge of or transported by the insured, or

\*      \*      \*      \*      \*      \*

(i) under coverage D, to injury or destruction caused directly or indirectly by fire or theft; or to injury to or destruction of

(1) property owned by or loaned or rented to the named insured, or

(2) automobiles being driven or transported from the factory or other wholesale distributing point to the purchaser or for storage; \* \* \*."

It is, of course, our duty to resolve any ambiguities in an insurance policy in favor of the insured (National Life & Accident Ins. Co. v. Lokey, 166 Ala. 174, 52 So. 45; Pennsylvania Fire Ins. Co. v. Draper, 187 Ala. 103, 65 So. 923; Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 So. 298; Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547; Safeco Ins. Co. of America v. Banks, 275 Ala. 119, 152 So.2d 666); however, an isolated sentence of the policy should not be construed alone, but in connection with other provisions of the said policy in order to arrive at a construction reasonably calculated to accomplish the intent and purpose of the parties. Mutual Life Ins. Co. v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A.1918D 860; Miller v. Liberty Nat. Life Ins. Co., 30 Ala.App. 503, 9 So.2d 129, cert. denied, 243 Ala. 250, 9 So. 2d 132.

As noted, the exclusion clause of the policy here in question exempts the insurance company from liability, under Cov-

erage B, for injury to or destruction of property owned by, rented to, in charge of, or transported by the insured (except as to the coverage relating to elevators under the Division 3 hazard, quoted above). The only ambiguity here, if any, is as to the meaning of the words "in charge of." While this particular exclusion clause in a Garage Liability Policy has not heretofore been interpreted by this court, it is almost universally held by courts of other jurisdictions that customers' cars, while being serviced or repaired, are "in charge of" the insured within the meaning of such an exclusion clause. See State Automobile Mut. Ins. Co. v. Connable-Joest, Inc., 174 Tenn. 377, 125 S.W.2d 490; Clark Motor Co. v. United Pacific Ins. Co., 172 Or. 145, 139 P. 2d 570; Parry v. Maryland Casualty Co., 228 App.Div. 393, 240 N.Y.S. 105; Root Motor Co. v. Massachusetts Bonding & Ins. Co., 187 Minn. 559, 246 N.W. 118; Yadro v. United States Fidelity & Guaranty Co., 4 Ill.App.2d 477, 124 N.E.2d 370; 2 Richards on Insurance, § 296, p. 978. In Cohen & Powell, Inc., v. Great American Indemnity Co., 127 Conn. 257, 16 A.2d 354, 131 A.L.R. 1102, and Welborn v. Illinois National Casualty Co., 347 Ill.App. 65, 106 N.E.2d 142, cited by appellee, a different result was reached, as well as in Vaughan v. Home Indemnity Co., 86 Ga.App. 196, 71 S.E.2d 111. However, the policies in question varied considerably from that with which we are here concerned.

The Florida case of Haenal v. United States Fidelity & Guaranty Co., 88 So.2d 888, is squarely in point with the instant case. There, the insured sought to collect for the loss of a customer's car by fire while it was in his shop for repairs, basing his claim on a Coverage B hazard contained in the policy which was identical with that quoted above. The policy also contained a Coverage D identical with that of the instant policy, quoted above, and an identical exclusion clause as to Coverage D. The exclusion clause as to Coverage B was also identical with that of the instant policy, quoted above. In fact, the policy in the

Florida case is on all fours with our own in pertinent parts, and that court held:

"The clear intent of the parties here, as in the policy construed by the Illinois court, was to extend coverage for liability for injury to or destruction of property 'in charge of' the insured, under Coverage D (and not even then for loss by fire); and to interpret the policy as providing for this same type of coverage (and even broader in scope) in Coverage B, as here contended for by Haenal, 'is unreasonable, absurd and would lead to results never intended or contemplated by the parties.' James v. Gulf Life Ins. Co., supra [Fla.], 66 So.2d 62, 63. And, like the Illinois court, we 'cannot under the guise of construction make a new contract for the parties.' " (88 So.2d, 890)

In the Illinois case mentioned in the quotation above, Yadro v. United States Fidelity & Guaranty Co., supra, 124 N.E.2d 370, 371, 372, that court had the similar problem before it and held:

"It is common for liability policies to define hazards and specify the extent and limits of coverage of different risks. A court is without authority to reject some of the express statements of coverage and then declare that another coverage was intended to apply in all cases, for this would violate the principle that a court cannot under the guise of construction make a new contract for the parties. * * *

"Since the policy in this case contained a specific and limited coverage of liability arising out of damage to property of others left in charge of the insured for service, and excluded damage by fire therefrom, the trial court properly entered judgment for the defendant, and the judgment is affirmed."

The fact that Taylor, the owner of the truck, was in and out of the garage during the day and was present when the truck caught fire, having stepped on the starter just prior to the time of the fire, does not,

1. Ante, p. 220.

in our opinion, bring about a different result. The evidence shows beyond peradventure that Taylor brought his truck to Jackson to have the carburetor repaired; that he did no work on the truck while it was in Jackson's garage and no work was expected of him.

We hold that the trial court erred in refusing to give the general affirmative charge as requested by the appellant. Therefore, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.