218 So.2d 822

**SOUTHERN GUARANTY INSURANCE COMPANY**

**v.**

**Ruby B. WALES et al.**

**8 Div. 315.**

Supreme Court of Alabama.

Feb. 6, 1969.

494

Camp, Page, Williams, Utsey & Spurrier, Huntsville, for appellant.

Lusk & Lusk, Guntersville, for appellees Wales.

Clark E. Johnson, Jr., Albertville, for appellee Glassco.

BLOODWORTH, Justice.

This is an appeal from a decree of the circuit court of Marshall County, in equity, which found that complainant, Southern Guaranty Insurance Company, is obligated by the terms of its policy issued to respondents, Ruby Wales and James Wales, to defend them in two damage suits filed against them by respondent, Lolas Glassco, and to pay all damages recovered by her within the policy limits.

On June 6, 1963 complainant issued its "Family Combination Automobile Policy" to James Wales for the period from June 6, 1963 to June 6, 1964. The policy was renewed on June 6, 1964, to expire June 6, 1965. Nonpayment of premium resulted in the policy lapsing on June 6, 1965. However, it was reinstated effective July 1, 1965 for a twelve month period.

By the terms of the policy James and Ruby Wales are both insureds, and a 1963 Valiant automobile is listed therein under "Item 4. Description of owned automobile or trailer." In March, 1964, James Wales purchased a 1960 Ford pick-up truck.

On December 17, 1965, while driving the truck, Ruby Wales was involved in an accident with respondent Lolas Glassco. At the time of the accident James Wales was using the 1963 Valiant automobile, described in the policy. The insurer was not notified of the acquisition of the truck until after the accident.

Lolas Glassco filed suits against James Wales and Ruby Wales, seeking damages for bodily injury and damages to her property. Demand was made on complainant that it defend the Wales, and that complainant acknowledge it would be responsible for any judgments rendered against them within the policy limits.

The insurance company refused both requests and then instituted the instant suit for a declaratory judgment.

There are five assignments of error in the record. However, complainant's brief primarily directs our attention to the fifth assignment. Consequently, we limit our consideration to that particular assignment.

Complainant (Southern Guaranty) contends that the trial court erred in ruling that the truck owned by respondent, James Wales, which was involved in the accident while being driven by Ruby Wales, was an "owned automobile" within the meaning of the policy issued by complainant to respondents Wales, and was therefore covered by that policy.

The coverage provisions applicable to this case read as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, * * * · hereinafter called 'bodily injury,' sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

arising out of the ownership, maintenance or use of the owned automobile, * * *."

Definitions, under Part I, states:

" 'named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

" 'owned automobile' means a private passenger, farm or utility automobile or trailer owned by the named insured * * *."

Item 2 of the declarations provides:

"Unless otherwise stated herein, the total number of private passenger, farm and utility automobiles owned on the effective date of this policy by the named insured does not exceed the number of such automobiles described in Item 4."

(The only automobile described in Item 4 was the 1963 Valiant.)

Condition 2 of the policy provides:

"PREMIUM: *If the named insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company during the policy period of such change.* Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof." [Emphasis supplied] Condition 17 of the policy provides:

"17. Declarations: By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

It is complainant's position that the acquisition of ownership of the 1960 Ford truck was not reported to the company during the policy period of its acquisition. Consequently, since there was no notice and no premium was collected, the truck is not entitled to coverage under the policy which complainant issued to respondent covering the 1963 Valiant.

Respondents contend that the "owned automobile" clause does not limit coverage merely to the automobile described in the declarations of the policy, but that the language of that clause extends coverage to any automobile owned by the insured regardless of whether the insurance company was notified of the acquisition of that automobile. They also contend that none of the exclusions contained in the policy specifically exclude coverage of an automobile which is not described therein, and

therefore respondent's truck is covered coming within the provisions of the "owned automobile" clause.

A contract of insurance like all other contracts must be construed so as to give effect to the intent of the parties to the contract. This court and courts throughout the country are clear to the effect that where there is no ambiguity in the policy it must be enforced as written. Colonial Life & Accident Insurance Co. v. Collins, 280 Ala. 373, 194 So.2d 532.

In construing a policy we must avoid taking a single provision or sentence and attaching to it greater significance than is intended by the whole terms of the policy. North River Insurance Company v. Jackson, 278 Ala. 604, 179 So.2d 731. And, of course, any ambiguities contained in an insurance policy are to be resolved in favor of the insured. North River Insurance Company v. Jackson, supra.

The contract of insurance we are here concerned with is known as "The Family Automobile Policy." As pointed out in Mattox v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 276 Ala. 172, 160 So.2d 458, it first began to appear in the automobile insurance field in 1956. The policy in this case seems to be couched in essentially the same language as the original policies which have been in use since 1956. (See, the historical discussion in *Mattox*, supra.)

Several cases have been cited to us from other jurisdictions which we believe are dispositive of the issue in the instant case.

In Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Traister (Fla. App., 1965), 173 So.2d 153, plaintiff purchased automobile insurance from the defendant covering a six month period which ended September 8, 1961. During that time plaintiff owned a Buick automobile which was listed on the policy. On April 14, 1961 plaintiff purchased a truck, but did not notify the insurer. When the policy expired September 8, 1961 plaintiff re-

newed coverage on the Buick for a six month period terminating March 8, 1962. On February 12, 1962 plaintiff was involved in an accident while driving the truck. The insurer denied coverage on the truck.

Confronted with these facts, the Florida District Court of Appeals reversed the lower court decision which found that plaintiff was covered by the policy. The language of the policy in that case appears to be identical to the one before this court. Under the heading "Conditions" it provided:

"If the named insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile * * * *he shall inform the company during the policy period of such change.* Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company." [Emphasis supplied.]

The Florida court held that this language was not ambiguous and gave effect to its plain and obvious meaning. It held *notice must be given to the company during the policy period in which the additional vehicle is acquired* in order to insure the additional vehicle.

We are convinced that the decision reached in Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Traister, supra, is sound authority to follow in the instant case.

We also agree with the decision of the 8th United States Circuit Court of Appeals in Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761 (8 Cir., 1962), in which that court held that no ambiguity exists in a clause precisely like that quoted above from the *Traister* case. As it points out, it is clear that such policy was written to afford automatic coverage for after acquired automobiles, although it does not cover other automobiles owned by insured at the time of the issuance of the policy when the ownership of the other automobiles is not disclosed or declared. The court said:

"The meaning of condition 2 in the policy with which we are here involved seems to us open and clear. It requires no constructions, strained or otherwise. It is not susceptible of different interpretations. Each of the three possibilities described—that is, if the named insured 'disposes of, acquires ownership of or replaces a private passenger * * * automobile'—are separate and distinct and refer to automobiles the insured may 'dispose of', 'acquire ownership of', or 'replace'. That two or more automobiles are contemplated by the policy is also made clear by the sentence, 'The named insured shall, upon request, furnish reasonable proof of the number of such automobiles * * * and a description thereof.'

"The policy provides for notice to the company only 'during the policy period of such change', an extremely liberal provision * * * [in] comparison with standard policies requiring notice of change, acquisition or replacement of automobiles within a much more limited period. Further, the policy provided, 'Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company.'"

█ In the present situation, respondent James Wales failed to notify the company "during the policy period of such change." Here, the policy was renewed on two occasions with no mention being made to the company of the acquisition of the truck until after Mrs. Wales was involved in an accident while driving it.

Respondent James Wales could have obtained insurance on the truck by simply informing the insurance company during the policy period in which he acquired the truck, and paying a premium adjustment for such additional coverage. At the time the policy was renewed respondent had already acquired the truck, yet he did not re-

quest coverage by informing the insurer. Had he intended to insure the truck (and his testimony clearly indicates he did not), it would have been a simple matter to inform the company and pay the resulting additional premium. Having failed to do so, respondent cannot now insist upon coverage for the truck.

We think what is said in Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co. v. Traister, supra, is applicable here, viz:

"It appears * * * that the deciding factor is whether the automobile, the ownership of which has not been communicated to the company, is owned at the time the insured purchases or renews his policy. *If the insured already owns the other automobile at the time of issuance or renewal of the policy, but doesn't notify the insurer, this automobile is not covered.* If, however, the insured acquires another vehicle after coverage has been obtained by either issuance or renewal of a policy, he is covered, [provided he informs the company during the policy period of such change] * * *." [Emphasis supplied.]

We recognize that there are instances where an insured has failed to notify the insurance company of the acquisition of a motor vehicle, yet various jurisdictions have found coverage under the particular policies in question. The distinguishing feature between those cases and this case is that in the former class of cases the *insured gave notice of the change (acquisition of automobile) within the policy period of such change, even though the notice was given after an accident had occurred.* See, Imperial Casualty & Indemnity Co. v. Relder (8th C.C.A., Mo.1962) 308 F.2d 761, supra; Beasley v. Wolf, Fla.App.1963, 151 So.2d 679; Sheffield v. Aetna Casualty & Surety Co., 57 Misc.2d 559, 293 N.Y. S.2d 213; American Universal Insurance Company v. Costello (1962), 95 R.I. 191, 185 A.2d 447.

Counsel for respondents urge that our decision in Mattox v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 276 Ala. 172, 160 So.2d 458, supra, has application to the instant case. In *Mattox,* supra, we held that a family combination automobile policy provided coverage for liability arising out of an accident in which the insured was involved while driving an automobile which, although it was not the one described in the policy, was in fact the only automobile owned by the insured when a renewal policy was issued to him for which he paid a premium. There, we specifically pointed out that we were not involved with a situation "where the insured owned more than one automobile at the time the policy was issued."

The instant case involves two automobiles, only one of which was an "owned automobile" at the time the parties agreed to the contract of insurance. We did not intimate in *Mattox,* supra, that an insured would have automatic blanket protection for each vehicle acquired after the purchase of a family combination automobile policy, by deeming it an "owned automobile." This is so in view of the language contained in "Condition 2" of the policy, which requires the insured to notify the insurer of the acquisition of an additional vehicle "during the policy period of such change," if coverage for that vehicle is desired.

There is still another reason which supports our decision. On the face of the policy, these words appear: "Item 3. The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. * * *" Under "Item 3" appears a series of blanks and columns, two of the columns being entitled: "CAR 1 PREMIUMS CAR 2." Under the column "CAR 1" there are two premium figures— $22.50 for "A Bodily Injury Liability," and under the figure $17.10 for "B Property Damage Liability." Nothing appears un-

der the column "CAR 2." Under the columns appears "Item 4. Description of owned automobile or trailer," and there the 1963 Valiant is described as "Car 1." Nothing appears opposite "Car 2." It is clear that Car 1 is the only car listed for which the insurance is afforded, and that it is also described as the "owned automobile." The words "owned automobile" where they appear later in the policy under "Definitions" clearly refer to the "owned automobile" described under Item 4.

When the coverage afforded under Item 3, the description of the owned automobile under Item 4, the definition of "owned automobile" under Definitions, and the condition of the policy relating to premium for an after acquired automobile are all considered together, it is clear that the only coverage afforded is for the described owned automobile, and in order for an after acquired automobile to be covered notice must be given to the insurance company during the policy period in which the change occurs.

Thus, it is our opinion that it was the intent of the parties as expressed in the policy to insure additional automobiles acquired by the insured during the policy period provided insured informed the insurer of such change during the policy period in which the change occurred, and that upon failure to do so there is no coverage.

We are of the opinion that the trial court erred in finding that appellant is obligated by the terms of its policy issued to respondents, Ruby Wales and James Wales, to defend them in two damage suits filed against them by respondent, Lolas Glassco, and to pay all damages recovered by her within the policy limits.

Therefore, the decree of the trial court is due to be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.