MADDOX, Justice.
This is an appeal from a declaratory judgment entered in a case brought to determine the extent of insurance coverage provided under an automobile dealership garage liability policy.
The insurer, Universal Underwriters Insurance Company, Inc., (“Universal”), filed the declaratory judgment action to determine its obligations under the liability provisions of the policy for the payment of damages to three individuals injured in an accident involving a particular automobile that was being operated at the time by a former partner of the automobile dealership.
FACTS
In 1983, William R. Wiggins and Harry Spencer formed Billy Wiggins Ford, Inc. Wiggins and Spencer owned 51% and 49% of the corporate stock respectively. On December 31, 1984, via a “buy-out agreement,” Spencer sold all of his stock and interest in the corporation to Wiggins. Pursuant to the buy-out agreement, Spencer received as consideration $90,000 and the use of a Ford automobile for one year. At the end of the year, title to the automobile was to be transferred to him.
Before the expiration of the year, on August 22, 1985, Harry Spencer was involved in an automobile accident while driving that automobile. Cleveland Wiggins and two other persons were injured in this accident. They sued Harry Spencer and Billy Wiggins Ford, Inc.
Universal had issued an insurance policy to Billy Wiggins Ford, Inc., effective October 1, 1984, through October 1, 1985. Universal, on behalf of Billy Wiggins Ford, Inc., filed defensive pleadings for the corporation, but determined that it was under no obligation to defend Harry Spencer. This determination was premised upon the idea that Harry Spencer was not entitled to liability coverage under the policy, because under the provisions of the buy-out agreement, effective December 31, 1984, he was *145 no longer associated with Billy Wiggins Ford, Inc.
Harry Spencer died while the declaratory judgment action was pending. Judge Col-quitt appointed an administrator ad litem to represent his estate, and the cause proceeded to trial.
In order to assist the jury in its factfind-ing responsibility, the court submitted written interrogatories, as authorized by Rule 49, Ala.R.Civ.P. The jury answered all the interrogatories, except one, favorably' to Universal’s position. In his judgment of April 23, 1987, Judge Colquitt stated that Harry Spencer was not entitled to liability coverage for the accident under the policy issued by Universal. The plaintiffs in the personal injury action appealed. The administrator ad litem of Spencer’s estate did not appeal.
Appellants raise four issues for our consideration, but we believe that the central issue is whether Harry Spencer was an additional insured under the terms of the policy in view of the particular facts of this case.
We have examined the record, and we are convinced that the 1985 Ford Crown Victoria that Spencer was driving was owned by Billy Wiggins Ford, Inc., and was a covered automobile under the terms of the policy.
In order to answer the coverage question, we have examined the policy language itself and the testimony of Universal’s agent who sold and serviced the policy. The policy contains many provisions, but the pertinent provisions involved in this case are contained in Part 500, which reads as follows:
“INSURING AGREEMENT — WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.”
tt * * *
‘“AUTO HAZARD’ means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:
“(1) used for the purpose of GARAGE OPERATIONS or
“(2) used principally in GARAGE OPERATIONS with occasional use for other business or non-business purposes or
“(3) furnished for the use of any person or organization. [Emphasis added].
tt * * *
“WHO IS AN INSURED — With respect to GARAGE OPERATIONS, other than the AUTO HAZARD or INJURY as defined in Group 5:
“1. YOU;
“2. YOUR spouse, if YOU are a sole proprietorship;
“3. Any of YOUR partners, paid employees, directors, executive officers, stockholders, while acting within the scope of their duties as such;
“4. If YOU are a partnership or joint venture, any partner or member thereof, but only with respect to their liability as such.
tt * * *

“With respect to the AUTO HAZARD:

“1. YOU;
“2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;
“3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.” (Emphasis added.)
We note from the record that Universal’s agent, who testified at trial concerning the coverages afforded by the policy language, was unable to specifically state the persons insured under subsection 3, which reads: “Any other person or organization required by law to be an INSURED while using an *146 AUTO covered by the Coverage Part within the scope of YOUR permission.” The witness unequivocally stated, however, that the “YOU” in the policy referred to the named insured, Billy Wiggins Ford, Inc.
The automobile being driven by Harry Spencer at the time of the accident was provided for his use pursuant to the provisions of the “buy out agreement” executed between him and William R. Wiggins on December 31, 1984, which, in pertinent part, reads:
“In consideration of the payment to Harry Spencer by William R. Wiggins of the sum of Ninety Thousand Dollars ($90,000.00) in cash ■plus the use of one 1985 Ford, Crown Victoria, Four Door Sedan, Serial Number 2FABP43F5X117567 as a demonstrator automobile and on January 1, 1986 the transfer of the title to said automobile to the said Harry Spencer and of the mutual covenants contained herein, the parties agree as follows:
“1. Harry Spencer shall retire from the corporations and shall sell, assign, and transfer all his shares of stock and other interests in the corporations and [their] assets to William R. Wiggins upon payment as hereinabove set forth.
“2. The stock certificates of Harry Spencer will be endorsed by Harry Spencer in favor of William R. Wiggins and will be delivered upon the execution of this agreement to the said William R. Wiggins. Harry Spencer warrants that there is no lien or encumbrance upon the said stock.
“3. The name of Harry Spencer shall not be used in connection with the corporations or by the corporations or [their] successors or William R. Wiggins individually in connection with the corporations after the consummation of this contract. Further, William R. Wiggins hereby agrees to indemnify and hold harmless said Harry Spencer from any consequence of the default of the corporations in payment of any indebtedness owned by the corporations. Harry Spencer agrees to indemnify and hold harmless William R. Wiggins and Billy Wiggins Ford, Inc. or Twin Rivers Auto Sales, Inc., for all acts of Harry Spencer taken on behalf of Billy Wiggins Ford, Inc. or Twin Rivers Auto Sales, Inc. not stated herein.
“4. The parties shall execute'and deliver all documents necessary to consummate this agreement at the time of execution of this agreement.” (Emphasis added.)
We note that the parties used the words “demonstrator automobile” in the buy-out agreement to describe the subject automobile. These words are not defined in Part 500 of the policy, but are defined in Part 300 (“auto physical damage”), as follows:
“ ‘DEMONSTRATOR-COMPANY AUTO’ means a COVERED AUTO shown on YOUR records as a demonstrator or company AUTO and (1) used in YOUR sales operation, or (2) furnished for the regular use of anyone. ” (Emphasis added.)
We recognize that the contract of insurance, as stated in the policy itself, is a “multiple coverage insurance policy,” and that “[u]nless stated otherwise in a Coverage Part, each Coverage Part is made up of it provisions” and “that each Coverage Part ... [is] a separate contract of insurance,” but we cite the definition of “DEMONSTRATOR-COMPANY AUTO” contained in another coverage part because the parties refer to the subject vehicle as a “demonstrator,” and because both coverage parts 300 and 500 make reference to a permissive use of covered automobiles. Also, the buy-out agreement states that Spencer had the “use” of the automobile.
As stated earlier, the trial judge submitted the case to the jury upon written interrogatories, and the jury returned the following verdict:
“We, the jury, have determined our answers to the questions submitted as follows:
“On August 22, 1985, the date ... the automobile accident occurred:
“(1) Was Mr. Spencer a paid employee of Billy Wiggins Ford, Inc.?
Yes No X
*147 “(2) Was Mr. Spencer a partner in Billy Wiggins Ford, Inc.?
Yes_ No X
“(3) Was Mr. Spencer a director of Billy Wiggins Ford, Inc.?
Yes_ No X
“(4) Was Mr. Spencer acting in a capacity of a director of Billy Wiggins Ford, Inc.?
Yes_ No X
“(5) Was Mr. Spencer a stockholder of Billy Wiggins Ford, Inc.?
Yes_ No X
“(6) Was Mr. Spencer an executive officer of Billy Wiggins Ford, Inc.?
Yes_ No X
“(7) Was Mr. Spencer an owner of Billy Wiggins Ford, Inc.?
Yes_ No X
“(8) Was Mr. Spencer driving the vehicle in question with the permission of Billy Wiggins Ford, Inc.?
Yes X No_
“S/Linda Andrews
“Foreperson”
The trial judge found that the verdict of the jury was “responsive to the issues,” and he ratified, approved, and adopted the jury’s verdict as his findings of fact in the case. He then concluded that the policy in question “did not afford insurance coverage of any kind to Harry Spencer on August 22, 1985, the date of the accident between the motor vehicle driven by Harry Spéncer and the motor vehicle driven by Cleveland Wiggins.”
The law applicable in this case is set out in another case decided by this Court involving the same insurer and a similar policy. See Kinnon v. Universal Underwriters Ins. Co., 418 So.2d 887 (Ala.1982). That case also involved a coverage question. The issue was resolved in favor of the company in that case, but the principles of law that this Court set out there are applicable here. There, this Court, speaking through Mr. Justice Beatty, opined:
“The only issue presented is whether James Terrell was insured under the dealership’s insurance policy. The identity of the insured and liability of the insurer are determined from the terms of the contract, Armstrong v. Security Insurance Group,, 292 Ala. 27, 30, 288 So.2d 134, 136 (1973), and this court must resolve any ambiguities contained in the policy in favor of the insured. Employers Ins. Co. of Alabama v. Jeff Gin Company, 378 So.2d 693, 695 (Ala.1979). But if a contract in its terms is plain and free from ambiguity, however, there is no room for construction, and it is the duty of the court to enforce it as written. E.g., Utica Mutual Insurance Company v. Tuscaloosa Motor Company, Inc., 295 Ala. 309, 313, 329 So.2d 82, 85 (1976); Southern Guaranty Insurance Company v. Wales, 283 Ala. 493, 496, 218 So.2d 822, 825 (1969); Chemstrand Corporation v. Maryland Casualty Company, 266 Ala. 626, 632, 98 So.2d 1, 6 (1957). Likewise, the court cannot refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties. Green v. Merrill, 293 Ala. 628, 631, 308 So.2d 702, 704 (1975).”
In Kinnon, the driver of the covered automobile merely lived in the household of the person to whom the automobile was provided as a “substitute automobile” while hers was being repaired, and the driver was held not to be covered. Here, however, the automobile was specifically provided for the “use” of Harry Spencer under the provisions of the buy-out agreement. As we read Kinnon, there was no point made in that case that the driver of the automobile at the time of the accident was a permissive user of the covered vehicle.
We have carefully examined the insuring agreement in this case, and, because the policy language is not completely free of ambiguity, we hold that the policy provided coverage for Harry Spencer under coverage part 500.
Coverage part 500 states that “Auto Hazard” means the “use of any AUTO [Billy Wiggins Ford, Inc.] own[s] ... and; * * * (3) furnished for the use of any *148 person or organization. (Emphasis added.)
The policy further provides:
“WHO IS AN INSURED — * * *:
U * * *
“With respect to the AUTO HAZARD:
“1. YOU [Billy Wiggins Ford, Inc.];
“2. Any of YOUR partners, paid employees, Directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU [Billy Wiggins Ford, Inc.] or within the scope of YOUR permission ...” (Emphasis added.)
The automobile was owned by Billy Wiggins Ford, Inc. It was furnished to Harry Spencer for his “use” pursuant to the provisions of the buy-out agreement. The insuring agreement provides “[t]he actual use of the AUTO must be by [Billy Wiggins Ford, Inc.] or within the scope of [its] permission.” Based on these facts, the ambiguity in the policy language, and the fact that the jury, in answer to an interrogatory, found that Spencer was “driving the vehicle in question with the permission of Billy Wiggins Ford, Inc.,” we hold that the trial judge erred, and that the judgment is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and BEATTY, J„ dissent.