152 So.2d 666

**SAFECO INSURANCE COMPANY
OF AMERICA**

v.

Jack BANKS and William B. Sims, Jr.

**6 Div. 738.**

Supreme Court of Alabama.

April 4, 1963.

Rehearing Denied May 9, 1963.

Huie, Fernambucq & Stewart, Birmingham, and Curtis, Maddox & MacLaurin, Jasper, for appellant.

Bevill & Bevill and Hugh D. Farris, Jasper, and Walter B. Henley, Northport, for appellee Banks.

Elliott & Jackson, Jasper, for appellee Sims.

## PER CURIAM.

Jack Banks, appellee, recovered judgment against appellee Sims in the circuit court of Greene County, Alabama, in tort, for injuries he received at the hands of appellee Sims while the latter was driving a Chrysler automobile which he, Sims, owned, but not specifically described in a liability insurance policy (form R–7) issued by appellant to Sims which described a Ford automobile also owned by Sims.

Appellant denied liability under its policy for the injuries which Banks received, declined to defend the suit filed by Banks against Sims, and also refused to pay the judgment or in any wise to protect Sims from the payment of damages to Banks.

Following this refusal, Banks filed suit in the circuit court of Walker County, in equity, pursuant to § 12, Title 28, Code of Alabama, 1940, making parties respondent thereto, both Sims and the alleged insurer, the above appellant. Sims filed a cross bill against appellant to recover certain damages which he claimed to have sustained by refusal of appellant to defend the suit of Banks against him and to pay the judgment.

The trial judge of the suit in equity rendered a decree in favor of Banks for the amount of the judgment plus lawful interest accrued at the time the decree was rendered, and also taxed appellant with the costs.

In the same decree the trial judge awarded $1140 damages to Sims against appellant, which, as set forth in the decree, covered $615 attorney's fee, which he incurred in defending the suit of Banks, $125 loss of time, and $400 otherwise specifically claimed.

From the decree, Safeco Insurance Company of America, a Corporation, appeals, and here seeks a reversal on the grounds that the policy (form R–7), which it admits was in full force and effect at the time Banks was injured, did not cover the Chrysler automobile which Sims was driving when Banks was hurt.

Banks and Sims in the trial of this cause seriously contended, and here also assert, that a liability policy (form R–5) was in force and effect at the time with Sims as the insured. This policy (form R–5) was issued to Sims in 1956, and according to Sims' contention was renewed on August 3, 1957, and was picked up by appellant's local agent Blackwood a few days after Banks was injured, and after Sims gave him notice of the accident when Banks was injured. A copy of this policy (form R–5) was placed in evidence for consideration by the trial court.

The trial judge commented in his opinion, accompanying his decree, that judgment in favor of Banks and Sims against appellant could well be based on a finding that the policy (form R–5) was in full force and effect at the time of the accident. This position, so the trial court stated, would be supported by the testimony of certain named witnesses, including the agent of respondent, G. Rile Blackwood. There was no positive and express judicial finding of this alleged fact on the part of the trial judge, who heard the evidence ore tenus, that such policy (R–5) was in effect at the time.

The trial court further stated that it preferred to rest judgment in the case primarily on the terms and conditions of the policy (form R–7), which appellant admits was in force and effect at the time of the accident, although soon thereafter cancelled.

In view of this placement of liability on policy (R–7), we will confine this opinion to the coverage vel non of this policy form

as did the trial court. We would not be justified in judicially finding the truth or the falsity of the evidence that policy form R–5 was in force and effect and controlling on this appeal in the absence of a definite and judicial finding of that alleged fact by the trial judge, who, as we have stated above, heard the evidence orally and is in better position than we are to pass upon the controverted fact.

It also appears from the evidence that not only does policy (form R–5), alleged to have been issued in 1956, and renewed, employ different phrasing with respect to coverage in policy (R–7), used in 1957, but policy form R–9, issued and used in 1958, is different from the other two with respect to coverage. The different phrasing, no doubt, was employed during the process of developing a satisfactory family automobile policy which began to appear in the automobile insurance field in 1956.

We are concerned here primarily, on this appeal, with the legal effect of appellant's family automobile policy or plan as evidenced by form R–7, admittedly issued to Sims soon after he filed an application with appellant's agent Blackwood on August 3, 1957, for automobile liability coverage. As we have previously stated, respondent Safeco admits this policy (R–7) was in full force and effect on August 10, 1957, when the accident occurred resulting in Banks' injuries, according to the jury verdict in his favor and judgment thereon in Greene County.

This policy (R–7) contains provisions pertinent to appellant's liability as follows:

"LIABILITY SECTION

"Coverage A—Bodily Injury Liability:

"Coverage B—Property Damage Liability:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by any person;

"B. Injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

"arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and SAFECO shall defend any suit alleging such damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but SAFECO may make such investigation and settlement of any claim or suit as it deems expedient.

"Definitions: Under the Liability Section:

(1) " 'owned automobile' means the described private passenger or utility automobile owned by the named insured, and includes a *temporary substitute* automobile and any trailer *owned* by the named insured; [Emphasis supplied]

(2) " 'temporary substitute automobile' means *any* automobile or trailer *not owned* by the named insured while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; [Emphasis supplied]

(3) " 'non-owned automobile' means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile; provided, however, that a private passenger or utility automobile or trailer owned by a relative shall be considered a 'non-owned automobile' while being operated by the named insured;"

We have italicized some words for emphasis and also for convenient reference

have designated certain paragraphs by numerals (1), (2) and (3).

We are impressed from appellant's brief that no question is raised as to appellees' contention that Sims, at the time of the accident, and maybe a few days before, was temporarily driving his Chrysler car, used primarily by his wife for local errands during the time he, Sims, had to be away from home for occupational reasons, while the Ford automobile, described in the policy, was immobilized for mechanical defects and under repair.

Appellant, in our opinion, obligated itself under coverage A to pay on behalf of the insured Sims all sums which he, Sims, "shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person (here appellee Banks) arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile," and to "defend any suit alleging such damages which are payable under the terms of the policy." Then appear definitions (1), (2) and (3) [above set forth] with respect to such obligation.

Definition (1) specifically includes the described Ford automobile, owned by Sims, and also a temporary substitute automobile *owned* by Sims, which, in the case at bar, was the Chrysler that admittedly was in temporary use.

Definition (2) defines a "temporary substitute automobile" to mean *any* automobile *not owned* by Sims while temporarily used as a substitute for the "owned automobile" (in this case the Ford) when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

Obviously, the latter definition (2) would cover an automobile borrowed by the insured from the repair shop or anyone else for temporary use while the Ford was under repair. This provision is more liberal and has a wider coverage than definition (1) which is limited to automobiles owned by Sims. Definition (1) permits

temporary use of any automobile *owned* by Sims while definition (2) extends this privilege to *any* car *not owned* by Sims. It is not necessary for this court here to decide whether the Ford must have been under repair before the privilege of using the Chrysler as a temporary substitute became operative. Without dispute the Ford was under repair.

We are not here concerned with an interpretation of the definition in paragraph (3) which extends the privilege of using a non-owned automobile. We might state parenthetically that it does not cast any shadow upon the coverage of definitions (1) and (2).

We have held in a long line of decisions that insurance policies should be liberally construed in favor of insured and strictly against the insurer. 12 Ala.Dig., Insurance, ☜146(3).

Ambiguities are resolved in favor of the insured. John Hancock Mut. Life Ins. Co. v. Schroder, 235 Ala. 655, 180 So. 327.

However, the rule that doubtful language in an insurance policy is to be construed most favorably to the insured is not to be carried to extent of construing the policy contrary to the manifest intention of the parties thereto. Moore v. Bankers' Credit Life Ins. Co., 223 Ala. 373, 136 So. 798.

We do not think that it was the manifest intention of appellant to limit its coverage under policy form R–7, above quoted, to exclude the Chrysler automobile of Sims from coverage while it was being used as a temporary substitute for the Ford automobile regularly used by Sims but under repair during the use of the Chrysler. We think a reasonable interpretation of the definitions of coverage in policy R–7 leads the judicial mind to a conclusion of coverage and liability on the part of appellant to protect Sims and to pay the judgment of Banks, costs, and the damages of Sims,.

here unchallenged, which he recovered. It is ordered that the decree of the trial court be and the same is affirmed.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and COLEMAN, JJ., concur.