189 So.2d 913

**BANKERS FIRE & MARINE INSURANCE COMPANY**

v.

**Paul H. LEECH et al.**

**5 Div. 822.**

Supreme Court of Alabama.

May 19, 1966.

Rehearing Denied Sept. 29, 1966.

I. 279 Ala. 418.

Spain, Gillon & Young, Ralph B. Tate and J. Wm. Powers, III, Birmingham, for appellant.

Ball & Ball, Montgomery, Russell, Raymon & Russell, Tuskegee, for appellees.

PER CURIAM.

Appellees, Paul H. and Irma W. Leech, were occupants of an automobile that collided with an automobile driven by William E. Howard, minor son of H. T. Howard, Sr. Both Howards were parties respond-

ent in this suit, but did not join in this appeal.

Mr. and Mrs. Leech both filed suit in the circuit court of Macon County against William E. Howard to recover damages growing out of the automobile collision. The defendant Howard was driving his father's car, a 1952 Ford, with permission of the father. Whether or not appellant had coverage on this 1952 Ford is the question here presented on this appeal.

The father, H. T. Howard, Sr., carried a liability insurance policy with Bankers Fire & Marine Insurance Company, hereafter referred to as Bankers, while Leech carried a liability policy with the Insurance Company of North America. This latter policy carried what is commonly called an uninsured motorist provision, whereby Leech was protected against collision with a motorist who did not have liability insurance.

Bankers denied coverage on the 1952 Ford that young Howard was driving when the collision occurred. The particulars supporting this denial will hereinafter appear.

Mr. and Mrs. Leech, along with their insurance carrier, the Insurance Company of North America, filed a petition in the circuit court of Macon County, in equity, for a declaratory decree as to whether or not Bankers' policy covered the 1952 Ford that young Howard was driving when the collision occurred.

The trial court, after hearing the evidence, in material respects without conflict, decreed that Bankers "is obligated under its policy to afford coverage to William E. Howard for the accident of November 21, 1962, in which Paul H. Leech and Irma W. Leech allegedly sustained their injuries." The court further decreed that the "Insurance Company of North America has no liability under its 'uninsured motorist coverage' inasmuch as William E. Howard was and is covered by Liability insurance."

Bankers appeals from this final decree and here asserts by proper assignments of error, amply argued, that the trial court erred in rendering a final decree in favor of complainants (appellees) and against this respondent (appellant).

It appears, as we view the evidence, that H. T. Howard, Sr., the minor's father, on April 13, 1962 procured from Bankers a liability policy that was issued by Alexander & Company, its general agent in Tuskegee, Alabama. This policy expired on April 13, 1963. It covered a 1952 Ford 4 Door Sedan B2CH161525, the car that the minor, with permission of his father, was driving when the collision with Leech occurred. This policy, while in force and effect, not only protected H. T. Howard, Sr., but also his minor son, William E. Howard, while driving the 1952 Ford with his father's permission.

On November 21, 1962, which was on Wednesday before Thanksgiving the next day, the insured, H. T. Howard, Sr., went to the office of Alexander & Company, the general agents, about 5:00 to 6:30 P.M., just as the office was about to close, and there contacted Robert L. Marshall, who was identified as with authority to act for the general agent.

H. T. Howard, Sr., then and there told Mr. Marshall that he had purchased a 1961 automobile and asked that the coverage be changed from the 1952 Ford to the 1961 car at Marshall's "earliest convenience." Howard declined Marshall's suggestion that he take term liability coverage on both cars. As we view the evidence, when this conversation took place, Howard was not then informed that the seller of the 1961 car had delivered the additional car. The evidence is not clear as to the exact hour the 1961 car was delivered, but when Howard got home, after leaving the office of Alexander & Company, the 1961 car was there. It seems that the seller was a soldier and had postponed delivery for a few days pending

completion of his arrangements for departure overseas.

When Howard left the office, Marshall without further delay although Howard was still in possession of the 1952 Ford, put an endorsement on the policy that purported to eliminate coverage on the Ford and to include the 1961 car that had been purchased. Marshall immediately mailed a copy to Howard and a copy to Bankers in Birmingham. Howard got his copy on Friday. The endorsement concluded:

"This endorsement forms a part of Policy No. CA–51–1733 issued to H. T. Howard, Sr., by Bankers Fire & Marine Company of Birmingham, Alabama, and is effective *from* 11/21/62 (12:01 A.M. Standard Time)." [Emphasis supplied.] Then followed the countersignature of Alexander & Company.

It is to be noted that the insured Howard testified that he informed the agent Marshall at the time that he planned to sell the Ford car. "I told him I planned to deliver it to Snowden's Garage and sell it just as soon as I could get my tools out." Marshall further testified:

"Q. Now, when you went there—did you or did you not tell Mr. Marshall that you would have the car that was covered under this policy for another couple of days?

"A. Yes, I did.

"Q. Alright. Did he tell you when the change would take effect?

"A. No, sir.

"Q. When you left there then, you did not know when the change would take effect. Did you assume that it would take effect—

"MR. TATE: I object.

"Q. —when you changed this car and notified him?

"A. No, I didn't think—As I have stated earlier, I did not think that he would continue working that evening.

"Q. Alright. What time did this accident occur?

"A. Between 9:00 and 10:00 o'clock.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you inform Mr. Marshall that you were going on home with this car and take your tools out of it, didn't you?

"A. I said that I was going home and that I would take my tools out and take it back to Snowden's for sale as soon as possible."

If we should hold that this endorsement became effective at 12:01 on November 21, 1962, it would be retroactive and void, because the request for discontinuance of coverage was not made until the hour of 5:00 or 6:00 o'clock on the afternoon of November 21, 1962. Should we disregard this endorsement and commit the parties to an oral agreement to discontinue coverage immediately as appellant contends?

We are not persuaded that the endorsement, under all the circumstances, should be construed to take effect at 12:01 A.M. on November 21, 1962. We observed in McQuinn v. City of Guntersville, 277 Ala. 328, 330, 169 So.2d 771:

"We are quite aware that the preposition 'from' has many dictionary definitions, too numerous to collate in this opinion; also, it has been the subject of many legal interpretations and constructions consonant with its use in particular statutory and contractual settings."

We also quoted with approval from Evans v. Sanders, 8 Porter 497, as follows:

"'Again: where the terms of a contract are susceptible of two significations, we ought to understand them in a sense, which is most agreeable to the nature of the contract; and where a clause is susceptible of different constructions, it should be taken in that sense

which will give to it some operation, rather than that which will have none * * *."

██ We think the endorsement should, if· possible, be given an operational meaning and should not be cast aside as a worthless scrap of paper. This operational meaning should be construed with the intention and agreement of the parties. Here we have H. T. Howard, Sr., approaching Mr. Marshall just as the office was closing. He still owned and was then in possession of the Ford, and was not informed at that time that the 1961·car had been delivered. Howard had no sale of the Ford in view until the next day or Friday, so he testified, and that he so informed Mr. Marshall. Marshall, according to Howard, was in possession of knowledge that the Ford would at least be driven from the office to Howard's home.

·The contractual setting indicates to us that the word ·"from" appearing in the endorsement should be construed to mean at 12:01 after November 21, 1962, and thus have operational effect. We so hold.

██ By a long line of decisions we have held that insurance policies should be liberally construed in favor of the insured and strictly against the insurer (Safeco Insurance Company of America v. Banks, 275 Ala. 119, 152 So.2d 666), and, also, in the same case, that ambiguities should be resolved in favor of the insured.

The decree of the trial court is affirmed.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.

·LAWSON, J., concurs in the result.