234 So.2d 886

**COTTON STATES LIFE INSURANCE COMPANY**

v.

**Carol Evelyn Cooper KNOWLES.**

**5 Div. 8.**

Court of Civil Appeals of Alabama.

April 29, 1970.

Martin, Balch, Bingham, Hawthorne & Williams and Edward S. Allen, Birmingham, Hooten & Hooten, Roanoke, for appellee.

Hubbard & Waldrop, Tuscaloosa, for appellant.

WRIGHT, Judge.

Appellee filed suit in the court below with a complaint in code form against appellant seeking recovery on a policy of life insurance upon the life of Craig Winfred Knowles, of which policy she was the beneficiary. The complaint was for $10,-000, due under a policy whereby the appellant, on the 18th day of February, 1966, insured the life of Knowles, who died on the 20th day of February, 1968. Demurrer was filed to the complaint and overruled and appellant filed a plea, which plea has been termed a plea of tender.

The plea alleges that the policy of insurance sued on by the appellee provides among other things:

> "If the insured, whether sane or insane, shall die by his own hand or act within two years after the date of policy, the liability of the company under this policy shall be limited to the premiums paid hereon."

The plea further alleged that the "Date of Policy" of the contract sued upon is March 1, 1966, and that the insured "died by his own hand or act on February 20, 1968, within two years after the date of policy." There was then averred the total amount of premium paid upon the policy, together with interest thereon at the rate of six percent from the date of death of the insured, and that such amount of premium paid, together with interest thereon, is tendered to the court in full discharge of appellant's obligations under the policy.

There was attached to the plea of appellant and incorporated therein by reference, xeroxed copies of certain portions of the policy, together with the application for the policy signed by the insured.

Appellee's demurrer to appellant's plea was overruled by the court, after which appellee filed replication No. 1 to the plea. Appellant's demurrer to appellee's replication No. 1 was sustained, and appellee filed amended replication No. 2. Appellant demurred to appellee's amended replication No. 2, which demurrer was overruled by the court.

Appellee's replication No. 2 does not deny that the "Date of Policy" as delivered was not March 1, 1966, nor that the insured committed suicide on February 20, 1968, but by way of avoidance of appellant's plea, asserts that on February 18, 1966, the insured made his application to the appellant for the insurance policy sued upon, and paid to the appellant the first full monthly premium specified in the application; that the application contained the following provision:

> "* * * however, if the first full premiums specified in the application on the policy applied for is paid on the date of this application and the receipt bearing the same serial number as this application is issued to the applicant, then the liability of the company shall be as stated in the receipt * * *"

The replication further avers that the receipt was dated February 18, 1966, and issued by appellant to the insured on that date.

The terms of the receipt were set out verbatim in the replication and we quote the pertinent portions thereof as follows:

> "The insurance under the policy for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if required) whichever is a later date * * *"

It was then alleged that no medical examination was required of the insured and that the policy was thereafter issued as applied for by the insured.

The policy when issued, had attached thereto a copy of the application, and provided in the first paragraph under "General Provisions" the following:

"The Contract. This policy and the application therefor, a copy of which is attached hereto and made a part hereof, constitutes the entire contract between the parties."

The thrust of the demurrer of appellant to appellee's amended replication "2" was that the replication confessed appellant's plea but did not avoid. Appellant contends that the term "Date of Policy" followed by March 1, 1966, appearing on the face of the policy, controls the application of the suicide clause when such clause contains the provision that if the insured should die by suicide within two years after the "Date of Policy" the liability of the company would be limited to the refund of premiums. In other words, appellant contends that the effective date of the suicide clause is the "Date of Policy," to-wit, March 1, 1966, rather than the effective date of insurance coverage which began, admittedly, on the date of the application and receipt, to-wit, February 18, 1966. Therefore, when the insured committed suicide on February 20, 1968, such suicide was within the two year provision of the suicide clause, and the liability of the appellant to the beneficiary was only for the refund of premiums.

Since appellee's replication did not specifically deny the matters set forth in appellant's plea, it is contended that the replication did not avoid the plea. Appellant admits the facts alleged in appellee's replication No. 2 are correct, and if said replication constituted a sufficient legal avoidance of appellant's plea, a trial upon the facts was but a waste of time of the trial court. Therefore, appellant declined to plead further and affirmatively refused to do so. The trial court thereupon entered judgment

nil dicit against appellant, assessed appellee's damages at $10,000 (the face amount of the policy), and rendered final judgment against appellant for such amount.

Appellant brings this appeal and assigns as error the overruling of appellant's demurrer to appellee's replication No. 2. If the demurrer was properly overruled by the trial court the case is due to be affirmed. If the trial court erred in its ruling then the judgment would be reversed.

■■■ There is thus presented to this Court the problem of construing the policy in its entirety, including the application and receipt, which are specifically made a part thereof. We must determine if the policy in its entirety is clear and unambiguous and without conflict in its provisions. If it is clear, unambiguous and without conflict, it must be construed as it reads. We are not at liberty under the settled rules of construction, to change the plain language of the policy or make a new contract for the parties. Insurance Co. of North America v. Williams, Ala., 226 So.2d 295. However, if, when examined in its entirety, the provisions of the policy are in conflict and ambiguous, they must be construed so as to speak the intent of the parties to the contract and if uncertainty or ambiguity exist, the policy will be construed most strongly against the insurer. Safeco Ins. Co. of America v. Banks, 275 Ala. 119, 152 So.2d 666; Mutual Life Ins. Co. of New York, v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235; Commercial Standard Ins. Co. v. New Amsterdam Casualty Co., 272 Ala. 357, 131 So.2d 182.

It is contended by appellant that there is no ambiguity in the policy, that the language of the provisions of the suicide clause are clear and unambiguous. That clause appears in the policy as follows:

"Suicide. If the insured, whether sane or insane, shall die by his own hand or act within two years after the Date of Policy the liability of the company under this policy shall be limited to the premiums paid hereon."

"Date of Policy" on the front page of the contract is immediately followed by the date of March 1, 1966. Appellant insists that since the phrase "Date of Policy" is emphasized by capitalization in the suicide clause that there is added emphasis and clearly refers to "Date of Policy" as it appears on the front sheet opposite the date March 1, 1966.

It is further insisted by appellant, that there is no requirement of law that the time from which the limitation of liability under the suicide clause begins to run must be the same as the date from which the insurance coverage under the receipt is first effective, or that the suicide clause must begin to run concurrently with the effective date of the insurance coverage. We find no fault with this contention as a general statement, but it must be viewed in light of the proposition that such provision must be clear and unambiguous when considered with the whole contract and must clearly express the intention of the parties.

In support of this general statement, appellant cites the case of Mutual Life Ins. Co. of New York v. Barrett, 215 Ala. 142, 110 So. 275. In that case the policy was, by agreement, antedated several months prior to the actual date of application and issuance. The antedating was for the purpose of allowing the insured an advantage in lower premium payments because of age. The policy date was May 18, 1924, but the policy was not even applied for until September 4, 1924, and was delivered on the 19th of September, 1924. The suicide clause in the policy provided as follows:

"Suicide. The company shall not be liable hereunder in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the date of issue of this policy.

"The 'date of issue' mentioned in the clauses herein entitled 'occupation, suicide,' and 'incontestability' * * * is the 16th day of September, 1924."

The Supreme Court, in its opinion, clearly pointed out that the contract spoke the intent of the parties when it specified a particular date of the beginning of the running of the suicide clause, in spite of the fact that the policy date was several months prior thereto. It was clear, that regardless of the policy date, the policy did not even provide coverage from such date, and, therefore, the suicide clause could not begin running until coverage was effective. "* * * The fact is, the policy was dated back for the purpose of giving insured the benefit of a smaller annual premium rate during his lifetime, that is, his expectancy, and the fact that insured destroyed himself before he began to realize the benefit of the fictional date cannot be allowed to interfere with other clearly expressed stipulations of the contract. This construction of the contract—if construction it may be called—since its terms are plain—gives force and effect to the suicide clause according to its obvious purpose and policy. Insured entered into the contract with full knowledge of its plain meaning, it must be presumed, and the court cannot, in the absence of fraud or deceit pleaded, remake it to meet the views of the beneficiary named therein who is as much bound by its terms as was the insured. * * *"

We do not consider the *Barrett* decision to be controlling or expressive of any of the issues involved in this case, except the principle that construction of the policy should give force and effect to its obvious intent and purpose. It can be of assistance to us in this matter in that it holds that regardless of "Policy Date" appearing on the face of the policy, such date is not controlling, when from surrounding circumstances in the making of the contract, it is clear that some other date was considered to be the effective date of coverage and to begin the running of the suicide and incontestability clauses. Such is the contention of appellee here.

The general provisions of the policy begin as follows:

"The Contract. This policy and the application therefor, a copy of which is attached hereto and made a part hereof,

constitute the entire contract between the parties * * * "

In light of this provision, we must look to the application and the receipt to which it refers, together with the policy and the surrounding circumstances to determine the intent of the parties to the contract. If there is apparent conflict between the provisions of the application and receipt and the policy, such conflict presents ambiguity and the burden is upon this Court to resolve the conflict and ambiguity.

As we see it, there would have been no problem of construction presented had the appellant company not chosen to present an alternative to insured at the time of securing his application for a policy of its insurance. It is clear that the company's usual method of doing business was to secure an application from a prospective customer through an authorized agent, secure medical examination if desired, process and approve the application, issue and deliver a policy and collect the first premium. In such usual method all provisions of the policy would take effect on the date the policy was signed. However, appellant provided the alternative to the usual, by allowing an applicant upon completion of the application and the payment of a first premium, duly receipted for, to become fully insured as of the date of the application and receipt, regardless of the date of the signing of the policy, of its issuance, or of its policy date. The insured in this case chose the alternative. To support our statement as to the usual method of doing business and the exception thereto, we quote from the application made a part of the contract:

"(1) The company shall incur no liability under this application until it has been received and approved, a policy has been issued and delivered, and the full first premium specified in the policy has been actually paid to and accepted by the company while health, habits and occupation of the proposed insured remain as described in this application in which case the policy shall be deemed to have taken effect as of the date on which the policy was signed. *However,* if the full first premium specified in the application on the policy applied for is paid on the date of this application and the receipt bearing the same serial number as this application is issued to the applicant, then the liability of the company shall be as stated in the receipt * * * " (Emphasis supplied.)

The application was complemented by a receipt of the same date of the application and bearing the same serial number thereof, which receipt is quoted in pertinent part as follows:

"Received from Craig Winfred Knowles the sum of Eleven and 44/100 ($11.44) Dollars for the full first premium specified in the application for insurance in The Cotton States Life Insurance Company which bears the same date and serial number as this receipt. The insurance under the policy for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if required) whichever is the later date * * * "

It is thus clear, and admitted by appellant here, that the effective date of the policy was that of the application and receipt, February 18, 1966.

It is the strained contention of appellant that though the payment of the first premium at the time of application changed the effective Date of Policy as to time of coverage from that appearing on the face of the policy, it did not affect or change the Date of Policy in any other provision thereof where time was an element. We cannot accept this contention.

Though the suicide clause is the provision specifically under consideration here, we may look to the whole policy to resolve conflicts and ambiguities. It is the phrase "Date of Policy" in the suicide clause which appellant insists, by referring to the same phrase as it appears on the first page of the policy, can mean only one date, and

that is the specific date appearing thereon, to-wit, March 1, 1966. The same phrase appears in the Incontestability Clause which is stated as follows:

"Incontestability. This policy shall be incontestable after it has been continuously in force during the lifetime of the insured for a period of two years from the *Date of Policy* except for non-payment of premiums and except for any provisions granting benefits in the event of accidental death or in the event of total disability if contained herein." (Emphasis supplied.)

If the argument of appellant is accepted, the phrase "Date of Policy" must mean the same in both the suicide and incontestability clauses, to-wit, March 1, 1966. If "Date of Policy" means March 1 in the incontestability clause, it would bring that clause in conflict with Title 28, Section 7, Code of Alabama 1940, which section reads as follows:

"Life policies incontestable after two annual premiums paid.–No life insurance company shall contest a claim under any policy of insurance on the plea of fraud or irregularities in application after two annual premium payments have been made on policy, * * *."

Considering that the first premium was paid on February 18, 1966, a simple calculation based on the return of premiums offered by appellant in its plea clearly indicates that two annual premium payments had been made on the policy by insured at the time of his death on February 20, 1968. The incontestability clause as it appears in the policy states that the two year period of contestability begins to run from the "Date of Policy." Appellant insists that "Date of Policy" means March 1, 1966. Under such contention it is obvious that the clause would be in conflict with, and opposed to, the provisions of Title 28, Section 7. We are certain that no insurance company would deliberately write a policy in which any of its provisions were in conflict with the law. Certainly our

consideration must be based on such presumption, and it gives us much assistance in resolving the conflict which appears.

We think the inference is clear that the appellant company delivered to insured a form policy designed to be issued in the usual and ordinary manner as provided by the first portion of the provisions of its application. Such form policy was designed to take effect and be placed in force on the date appearing on the face thereof. The fact that the insured took the alternative method of securing insurance provided him by the application and placed such insurance in force prior to the "Date of Policy" was not taken into consideration and the form policy was filled out and delivered to insured. When construed with the application and receipt, there is obvious conflict and ambiguity which must be resolved in favor of the insured. Safeco Ins. Co. of America v. Banks, 275 Ala. 119, 152 So.2d 666; American National Ins. Co. v. Motta, 5 Cir., 404 F.2d 167.

Our search of the cases presented as authority by appellant and other cases relative to the question involved, indicates that those policies containing one date for date of policy or date of issue, and another for the effective running of the suicide and incontestability clauses, were instances in which the date of policy or date of issue was predated, either at the request of, or for the benefit of, the insured for the purpose of his obtaining lesser premiums. Though a prior date appeared in the policy, whether it be termed policy date, contract date, or date of issue, the effective date of coverage and the effective date of the running of the suicide and incontestability clauses were held to be the same. In some of the cases, because the clear intent of the parties and the surrounding circumstances were plainly set out in the provisions of the contract, the courts held that there was no ambiguity and the contract must be construed as it plainly appears. Such was the basis of decision in Byram v. Equitable Life Assurance Society of The

**614**

United States, D.C., 180 F.Supp. 620, a Louisiana case, cited by appellant.

We have found in this case that there is a clear conflict and ambiguity between the provisions of the application and receipt and the policy.

 We hold that when a company, of its own accord and presumably for its own benefit, chooses to provide in its application an alternative to, or exception from, its usual manner of doing business, accepts a premium and places in effect a policy of insurance on the life of an insured on a date which precedes its date of delivery, date of issuance, or date of policy, all provisions of the policy when issued are controlled by the effective date of the policy, unless the contract when taken in its entirety, and in relation to the surrounding and attendant circumstances, or by specific provisions otherwise, clearly and unambiguously shows to the contrary.

In this case, the application, the receipt, the policy and the language employed therein is that of the company, and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235.

The recent case of American National Ins. Co. v. Motta, decided by the United States Court of Appeals, Fifth Circuit, and cited as 404 F.2d 167, was, for all practical purposes, identical in facts and situation with the case at bar. Its decision is in agreement with our decision here.

It is our opinion that the trial court did not err in overruling appellant's demurrer to appellee's amended Replication No. 2 in that said replication sufficiently traversed and fully avoided the allegations of appellant's plea.

The judgment of the lower court is in all respects hereby affirmed.

Affirmed.