## HOLTZE *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

[Misc. No. 1, September Term, 1975.]

*Decided February 3, 1976.*

682

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ., and ALBERT P. CLOSE, Associate Judge of the Third Judicial Circuit, specially assigned.

*James M. O'Neill,* with whom was *James T. Sharkey* on the brief, for appellant.

*Robert S. Bennett,* with whom were *Richard Landfield, Timothy J. Bloomfield* and *Dunnells, Duvall & Porter* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Acting in pursuance of Maryland Code (1974, 1975 Cum. Supp.), Courts and Judicial Proceedings Article §§ 12-601—12-609 (the Uniform Certification of Questions of Law Act), the United States District Court for the District of Columbia has certified to us two questions of law:

(i) What items in the record [of this case] constitute the "written instrument in which the contract is set forth" for purposes of Code [(1957, 1972 Repl. Vol.) Art. 48A, § 364]?

(ii) What was the "date of issue" of the involved policy (*i.e.,* the "written instrument in which the contract of insurance is set forth") for

purposes of Code [(1957, 1972 Repl. Vol.) Art. 48A, § 390]?

The relevant facts as stated in the order for certification are as follows:

The deceased, Per-Olof Holtze, while a resident of Maryland, made application to Equitable [Life Assurance Society of the United States (Equitable)] for a term life insurance policy in the amount of $100,000.00. Part I of the application was dated October 10, 1969, and Part II of the application was dated October 20, 1969. Upon receipt of a first premium which was paid on October 24, 1969, a conditional receipt bearing that date was given to the deceased. The conditional receipt provided:

"If a satisfactory Part II of the application is furnished to the Society and if the Society shall be satisfied after such investigation and such medical examinations as it may require that the Proposed Insured is on this date insurable and qualified under the Society's rules and standards for insurance in the amount and on the plan applied for and at the premium specified herein, the insurance applied for shall take effect and be in force subject to the provisions of the policy applied for from the date of this receipt . . . ."

The conditional receipt which was attached to the application, Part I provided:

"This receipt must not be detached unless application is signed and first premium collected."

The conditional receipt was detached prior to the issuance of the formal policy.

On November 28, 1969, Equitable issued a $100,000.00 term life insurance policy to Mr. Holtze on his life (Policy No. 69,401,197). In issuing this policy, Equitable relied upon the representations made by Mr. Holtze regarding his medical history which were contained in Part II of his written application for insurance dated October 20, 1969.

The annual premiums on this policy were due and payable on November 28, 1970 and every 12 months thereafter.

This policy, formally issued on November 28, 1969, contained a standard incontestability clause which provided:

"INCONTESTABILITY. Except as to any disability or accidental death benefit provisions, this policy will be incontestable, except for non-payment of premiums, after it has been in force during the lifetime of the Insured for two years from the Date of Issue shown on page three."

Page three states: "DATE OF ISSUE Nov. 28, 1969."

Mr. Holtze died on November 19, 1971.

From the foregoing, it can be seen that whether the Equitable can resist the claim of Lillie Holtze, widow of Per-Olof Holtze and the beneficiary named in the policy, on the ground that the deceased insured made material misrepresentations as regards his medical history in his application for insurance turns on the question whether the date of issue for purposes of the two-year incontestability clause is November 28, 1969 (the date specified in the incontestability clause) or October 24, 1969 (the date of the conditional receipt and first payment of premium).

Article 48A, our Insurance Code, was substantially revised by Chapter 553, § 1 of the Laws of 1963. So far as we are aware, neither § 364:

" 'Policy' means the written instrument in which the contract of insurance is set forth, and includes all clauses, riders, endorsements and papers attached thereto or made a part thereof."

nor § 390:

"There shall be a provision that the policy (exclusive of provisions relating to disability benefits or to additional benefits in the event of death by accident or accidental means) shall be incontestable, except for non-payment of premiums, after it has been in force during the life-

time of the insured for a period of two (2) years from its date of issue."

both of which are referred to in the order for certification, has previously been considered by this Court.

We have no hesitancy in concluding that the conditional receipt given to Mr. Holtze on October 24, 1969, together with Parts I and II of his application for insurance dated October 10 and October 20, respectively, came within the ambit of "clauses, riders, endorsements and papers attached thereto [the contract of insurance] or made a part thereof" as set forth in § 364.[1] *See Simpson v. Prudential Insurance Co.,* 227 Md. 393, 177 A. 2d 417 (1962).

Turning now to the provision of the conditional receipt:

"If a satisfactory Part II of the application is furnished to the Society and if the Society shall be satisfied after such investigation and such medical examinations as it may require that the Proposed Insured is on this date insurable and qualified under the Society's rules and standards for insurance in the amount and on the plan applied for and at the premium specified herein, the *insurance applied for shall take effect and be in force subject to the provisions of the policy applied for from the date of this receipt. . . ."* (emphasis supplied).

It is clear to us that the language of the conditional receipt is intentionally framed to provide coverage for the insured *from the date of the receipt* in the event of the acceptance of his application. When this is equated with the language of the incontestability clause,

"INCONTESTABILITY. Except as to any disability or accidental death benefit provisions, this policy will be incontestable, except for non-payment of

---

1. We are unpersuaded by Equitable's argument that the conditional receipt, because it was detached from the application, cannot be considered a part of the policy. § 364 states that "papers," in order to comprise part of the policy must be either "attached thereto *or* made a part thereof." (emphasis supplied).

premiums, after it has been in force during the lifetime of the Insured for two years from the Date of Issue shown on page three." [2]

the ambiguity is readily apparent: does the period of incontestability commence two years from the date of issue of a policy not then in existence, or two years from the date of the conditional receipt, when the policy "shall take effect"? The general rule is stated in 18 G. Couch, Cyclopedia of Insurance Law § 72.33, at 62 (2d ed. 1968):

"Where there is an ambiguity in an incontestable clause in an insurance policy, such ambiguity will be resolved in favor of the insured, as where the application provided that the insurance was to be effective as of a certain date but the policy was dated some months thereafter, the contestable period would start to run from the earlier date."

While this Court does not appear to have considered the effect of the issuance of a conditional receipt upon an incontestability clause, at least a portent can be discerned in *Simpson v. Prudential Insurance Co., supra,* 227 Md. 393, 177 A. 2d 417. There, the insured, who had been issued a conditional receipt when he paid the initial premium on a basic life policy for $3,000.00, with additional, but diminishing term insurance in an amount of $10,000.00, was killed in an accident about two weeks after the issuance of the conditional receipt but before the delivery of the policy.

After a careful consideration of the effect of so-called "conditional" or "binding" receipts issued upon payment of the first premium on policies of life insurance, this Court, speaking through Chief Judge Brune, concluded that a contract of insurance had been formed when the premium was paid and the receipt issued. Because the insured died before the policy was issued, the Court concluded that the insurer would be liable if the insured met an objective standard of insurability. *See* Annot., 2 A.L.R.2d 943, 986-87

---

2. The date shown on page three was "Nov. 28, 1969."

(1948); 1 J. Appleman, Insurance Law and Practice § 312, at 544-47 (1965 ed.).

Concededly, the cases elsewhere are in conflict, *see* Annot., 37 A.L.R.3d 933 (1971). Mrs. Holtze relies on *American National Insurance Co. v. Motta*, 404 F. 2d 167 (5th Cir. 1968); *Schwartz v. Northern Life Insurance Co.*, 25 F. 2d 555 (9th Cir.), *cert. denied*, 278 U. S. 628 (1928), and *Cotton States Life Insurance Co. v. Knowles*, 45 Ala. App. 607, 234 So. 2d 886 (1970), all of which hold that the effectiveness of a suicide clause is calculated from the date of the conditional receipt,[3] and on *Gaunt v. John Hancock Mut. Life Ins. Co.*, 160 F. 2d 599 (2d Cir.), *cert. denied*, 331 U S. 849 (1947), where the insurer contended that one of the purposes of the earlier effective date was to make the policy incontestable sooner.

Equitable, on the other hand, would have us adopt the rule exemplified by *Byram v. Equitable Life Assurance Society of United States*, 180 F. Supp. 620 (W. D. La. 1959), *aff'd*, 274 F. 2d 822 (5th Cir.), *cert. denied*, 363 U. S. 830 (1960); *Crowley v. Travelers Insurance Co.*, 196 F. 2d 315 (5th Cir. 1952) and *Davis v. Fidelity Mutual Life Insurance Co.*, 107 F. 2d 150 (4th Cir. 1939), which stand for the proposition that the two-year period of contestability begins to run at the date of issue and not at an earlier date when coverage commenced.

We regard the cases relied on by Mrs. Holtze as the better reasoned and as more consonant with our holding in *Simpson v. Prudential Life Insurance Co.*, *supra*, 227 Md. 393, 177 A. 2d 417. Code (1957, 1972 Repl. Vol.) Art. 48A, § 390 requires any life insurance policy issued in Maryland to be incontestable "after it has been in force . . . for a period of two (2) years from its date of issue," and *Simpson* determined that a policy issued pursuant to a conditional

---

**3.** We note that the phrase "within two years from the Date of Issue" appears in both the suicide and incontestability clauses of Holtze's policy. Thus, there is no discernible distinction between the effective date of the suicide and incontestability clauses; therefore, those cases dealing with suicide clauses are equally relevant to the issue of the effective date of the incontestability clause.

receipt provides insurance from the date of the conditional receipt. We are of the opinion, also, that the statutory phrase "after it has been in force . . . for a period of two (2) years from its date of issue," read in light of *Simpson,* must mean that the period of contestability dates from the date of the conditional receipt.

In *Gaunt v. John Hancock Mutual Life Insurance Co., supra,* 160 F. 2d at 602, Judge Learned Hand observed for the court:

> ". . . [T]he ordinary applicant who has paid his first premium and has successfully passed his physical examination, would not by the remotest chance understand the clause as leaving him uncovered until the insurer at his leisure approved the risk; he would assume that he was getting immediate coverage for his money."

In *Gaunt,* where the question was whether the insurance became effective upon completion of the application or upon issuance of the policy, the insurer, in support of its contention that coverage commenced only upon issuance of the policy, argued that among the benefits, in lieu of immediate coverage, conferred by the language on the application was that *the policy would sooner become incontestable.* It is generally assumed that the true function of a conditional receipt is to prevent a change of mind on the part of the applicant for insurance, *see* Comment, *Operation of Binding Receipts in Life Insurance,* 44 Yale L. J. 1223 (1935) and Comment, *Life Insurance Receipts: The Mystery of the Non-Binding Binder,* 63 Yale L. J. 523, 534 (1954).

In sum, although we are aware of the rationale of the cases on which Equitable relies, that while risk may attach upon issuance of the conditional receipt, the incontestability and suicide clauses commence to run only from the date of the issuance of the policy, we conclude, as did Judge Hand, that if this is what insurers intend, they should say so in the conditional receipt in language which can be understood by their insureds.

On the facts before us, we hold that (1) the conditional

receipt, together with Parts I and II of the application, are part of the "written instrument in which the contract is set forth." (2) "the date of issue" of "the written instrument in which the contract of insurance is set forth" was October 24, 1969, and that the two-year period of contestability commenced to run on that date.

*Questions of law answered as herein set forth; costs to abide the result.*